IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
(Orlando Division)

**Case No.: 6:22-cv-488**

ST. PAULS PRESBYTERIAN CHURCH INC
d/b/a QUEST CHURCH,

    Plaintiffs,

v.

WESTCHESTER SURPLUS LINES
INSURANCE COMPANY,

    Defendant.

_____ /

Removed from Circuit Court
of Orange County, Florida
Case No: 2021-CA-10961

## **DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Defendant Westchester Surplus Lines Insurance Company ("Westchester"), by and through the undersigned counsel, hereby respectfully moves this Court to grant it summary judgment on Plaintiff St. Pauls Presbyterian Church, Inc., dba Quest Church's ("Quest's") claim for breach of contract. The uncontested facts demonstrate that Quest purchased a policy that provides no coverage for the alleged collapse loss on its building. Westchester is entitled to judgment as a matter of law. A memorandum of law in support of this Motion is incorporated here and immediately follows.

This Motion is supported by the averments in the Complaint, the Declaration of Andrew Norris, and documents authenticated by that Declaration, attached as

1

"Exhibit A," the Declaration of Michelle Feduccia, P.E., of J.S. Held, attached as "Exhibit B," the certified copy of the policy attached as "Exhibit C," the deposition testimony of Kimberly Tarver, who served as the Corporate Representative ("C.R.") of Westchester on questions of underwriting at deposition, and the deposition testimony of Quest's C.R. Bryan Stamper.

WHEREFORE, Defendant Westchester Surplus Lines Insurance Company requests this Court enter final summary judgment in its favor on Plaintiff's sole claim for breach of contract and grant Defendant any other relief this Court deems just and proper.

Date: September 5, 2023               Respectfully submitted,

By:   /s/ David C. Bibb
David C. Bibb (Fla. Bar No. 190330)
ROLFES HENRY CO., LPA
3191 Maguire Boulevard, Suite 160
Orlando, Florida 32803
Telephone:  (407) 284-4990
Email:      dbibb@rolfeshenry.com
            rkitchens@rolfeshenry.com

Brian P. Henry, Esq. (Fla. Bar No. 089069)
ROLFES HENRY CO., LPA
5577 Broadcast Court
Sarasota, Florida 34240
Telephone:  (941) 684-0100
Email:      bhenry@rolfeshenry.com
            kmcclintock@rolfeshenry.com

*Attorneys for Defendant Westchester Surplus Lines Insurance Company*

# MEMORANDUM IN SUPPORT OF
# DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

**I.     Summary of Argument**

Quest sought a commercial property policy to cover four buildings it owns at 1450 Citrus Oaks Ave., Gotha, FL 34761, and in the application process it omitted the disclosure to Westchester that these four buildings were constructed with EIFS material. Westchester's underwriters examined Quest's application for insurance and assessed Westchester's risk based on Quest's representations. The presence of EIFS in a property is material to assessing the magnitude of a property risk, as it can exacerbate certain losses and risks of loss. Westchester offered coverage, and quoted a premium, consistent with Quest's representation that EIFS materials were *not* used in the construction of these buildings, and provided a Quote to Quest that reiterated there was "no EIFS/ Dryvit on the exterior walls" of the buildings. Quest examined that Quote, did not offer to correct any information on it, and agreed to purchase that coverage.

A true copy of policy number MMF15137630 002 (with policy period January 1, 2021 – January 1, 2022), in effect on the alleged date of loss of June 23, 2021, is attached hereto as Exhibit C. This policy was originally incepted under a different policy number in January 1, 2018, and this was the third renewal policy. The policy includes an EIFS Construction Provision Endorsement that limited covered losses to

those enumerated in subsection C (1) through (7) of the Endorsement for damage to any building clad in an amount greater than 5% of its exterior surface area in EIFS material. But contrary to what Quest represented in its application for insurance, the exterior walls of the building that allegedly suffered the collapse loss on June 23, 2021, were clad *entirely* in EIFS material, with the exception of doors and windows. As a result, any loss to this building is subject to the limitations in coverage contained in the EIFS Construction Provision. The loss to Quest's insured property on June 23, 2021, was not caused by one of the enumerated covered causes of loss in the EIFS Construction Provision, and for this reason Quest is not entitled to coverage for this loss under the policy.

## II.   Statement of Material Uncontested Facts

Bryan Stamper, the pastor of Quest Church, served as its Corporate Representative at deposition. Mr. Stamper testified as to the construction of the various buildings on the church's campus and that they were built using EIFS cladding. See *Deposition of Brian Stamper ("Stamper Depo"),* p. 34 lines 22-25. Quest applied for commercial property insurance in the surplus insurance market through a retail agent in 2017. Among the submission documents submitted by the retail agent to the insurance broker (and, ultimately, to Westchester), was a Statement of Values, which is a set of spreadsheets in which the applicant is asked to identify each building for which the property insurance is sought, and to provide

4

information such as the year it was built, its square footage, and in column G of the "AmRisc Supplement" statement, the applicant is asked to identify the exterior cladding material of each building, according to a key provided on the Supplement. *See Declaration of Andrew Norris, attached hereto as "Exhibit A*," at exhibit A-1. Kimberly Tarver was Westchester's underwriting representative and testified as Westchester's Corporate Representative. She explained, "the questions on [the AmRisc Supplement] are like more detailed and specific for properties that are exposed to hurricanes. Named storms." *Deposition of Kimberly Tarver* at p. 25, lines 12-14. The key on the AmRisc Supplement designated "EIFS" with the number "6." Ms. Tarver was asked, "so that's where the carrier is asking for the information?" *Id.* at p. 26, lines 2-3. She responded:

> Yes. It means [if] it was present, a predominant like, exterior [cladding], then we would have expected to see a [six] listed for the applicable buildings where EIFS was present.

*Id.* at p. 26, lines 4-7

Quest did not disclose that its buildings were clad in EIFS — Column G is blank. See *Exhibit A, Declaration of Andrew Norris*, at ¶ 4-7

EIFS is a non-load-bearing wall cladding material made of rigid insulation panels coated with synthetic stucco. *See Declaration of Michelle Feduccia, attached hereto as Exhibit B*, at ¶ 5. Ms. Tarver explained how the presence of EIFS on a

property significantly impacts the nature and magnitude of the risk for underwriting purposes:

> We apply different underwriting terms and conditions to buildings with EIFS. It's a type of construction material that we know can exaggerate a number of different losses. So if EIFS is present on a building and the underwriter—you know, we've been told the building has EIFS, then the underwriter would underwrite that exposure through a different lens. They would –you know, either depending on how much EIFS was present and potentially other conditions of the property, how close it was to water, maybe the age of construction you know, different underwriting factors, they may decide to decline the risk. Or if there was let's say less EIFS and there were other conditions present that were not as risky, for lack of a better word, then the underwriter could offer terms and conditions for that risk, but the terms and conditions may be different. So the deductible might be higher, the policy limit might be lower, the premium might be higher for buildings that have let's say an acceptable level of EIFS or other conditions—positive conditions that would offset the added exposure of the EIFS.
> * * * *
> So for a building that the underwriter thought had no EIFS, they would have underwrote that building through a different lens and then a positive lens because, you know, there was less risk present if the building did not have EIFS. So that particular risk would get better terms and conditions than a building that did have EIFS, assuming we were giving terms and conditions at all.

*Deposition of Kimberly Tarver*, p. 27 line 4 through p. 28 line 9.

Westchester relied on the information Quest provided in offering coverage.

As Kimberly Tarver explained:

> [I]n reviewing the submission documents that we received from the wholesale broker there was no indication EIFS was present, and therefore we offered terms and conditions for a building that did not have EIFS—or more than 5% EIFS on the exterior surfaces.

*Id.,* p. 26, lines 20-25

Westchester generated a Quote for Coverage on December 31, 2019, that explicitly stated in the Quote Conditions, "No EIFS /Dryvit on the exterior walls." The Quote is attached as *exhibit A-2 to Exhibit A*. The Quote Conditions further provided, "This quotation has been constructed in reliance on the information and specifications provided in the submission. A material change or misrepresentation of the submission information and specifications may void this quotation." *Id.* Quest did not offer to correct any error on the quote. *See Exhibit A, Declaration of Andrew Norris* at ¶ 9. Instead, Quest accepted this quote and purchased the coverage as offered. The policy Quest purchased was tailored to provide all risk coverage for buildings that are *not* clad in EIFS in an amount greater than 5%. *Exhibit A at ¶ 12.*

Accordingly, the policy provides the following endorsement on form ACE 0834 of the Commercial Property Form:

**EIFS CONSTRUCTION PROVISION**
**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY. THIS ENDORSEMENT MODIFIES INSURANCE PROVIDED UNDER THE FOLLOWING:**
**COMMERCIAL PROPERTY COVERAGE PART**
**COMMERCIAL INLAND MARINE COVERAGE PART**

**A.** This insurance does not cover loss or damage to covered buildings or structures with Exterior Insulation and Finish system (EIFS) covering more than 5% of the exterior surface of such building or structure.
**B.** For purposes of this endorsement, "Exterior insulation and Finish Systems (EIFS)" means a non load bearing exterior wall cladding system that consists of an insulation board attached either adhesively or mechanically, or both, to the substrate, including an

7

>    integrally reinforced base coat and/or a textured protective finish coat.
> **C.** If they are Covered Causes of Loss, this exclusion does not apply to loss or damage caused by the following perils:
>    1. Earthquake/Earth Movement
>    2. Smoke causing sudden and accidental loss or damage
>    3. Impact of Aircraft or Vehicles
>    4. Riot or Civil Commotion
>    5. Vandalism
>    6. Sprinkler Leakage
>    7. Sinkhole Collapse
>
>  All other terms and conditions remain unchanged.

*Exhibit C. Certified Copy of Policy*, at *ACE 0834, p.53*.

Quest Church accepted this Policy, including the EIFS Construction Provision, and did not object or offer a correction to this coverage. *Declaration of Andrew Norris at ¶ 11*. On June 23, 2021, Mr. Bryan Stamper, the Pastor of Quest Church, entered the annex area of what he refers to as "Building 100" and discovered "standing water in every room" of the building. *See Deposition of Bryan Stamper*, p. 22, lines 18-24. As he walked through the building, he found an area with debris on the floor, including ceiling tiles and boards. *Id.,* at p. 26, lines 8-19. When he looked up, he could see a hole in the ceiling and through the roof of the building: "you could see the sky through the hole." *Id.* at lines 6-7.

The roof of the building had collapsed. Ms. Feduccia is a licensed professional engineer employed by J.S. Held, who examined the loss on July 12, 2021, on behalf of Westchester. *See Exhibit B*, at ¶ 2. She affirms that the cause of the collapse was the weight of accumulated rainwater on the roof. *See Exhibit B,"* at ¶ 6. Quest

Church avers in paragraph 8 of the complaint "On or about June 23, 2021, Plaintiffs' Insured Property was damaged by a sudden collapse and ensuing damages."

Ms. Feduccia affirms that the exterior surfaces of building 100 (the building in which the loss occurred) were "clad approximately 90% in EIFS material, exclusive of the roof." *See Exhibit B* at ¶ 4. Mr. Stamper likewise testified that he was aware when building 100 was constructed that it was covered by a coating material, and by 2010 he was aware that coating material was called EIFS. *Deposition of Bryan Stamper, p. 34 lines 22-25; p. 37 lines 7-17.*

These uncontested facts are the only material facts to this motion for summary judgment.

### III.   Legal Standard for Summary Judgment

A motion for summary judgment should be granted if the evidence in the record demonstrates there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party has the burden of demonstrating to the Court the absence of a genuine issue of fact and informing the Court of the basis for the motion by identifying those parts of the record that show the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving

party." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986). If there is no issue for trial, summary judgment should be granted. *See Id*. at 249.

"When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 586 (1986). The nonmoving party must come forward with specific facts that demonstrate a genuine issue for trial. *See Id*. at 587. "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Id*.

The substantive law applicable to the case determines which facts are material. *United States v. Four Parcels of Real Prop*., 941 F.2d 1428, 1437 (11th Cir. 1991) (superseded by statute on other grounds).

### IV. Legal Standard for Construction of Insurance Policies

Insurance policies are contracts and are construed the same way other contracts are construed.

> "[I]n construing insurance policies, courts should read each policy as a whole, endeavoring to give every provision its full meaning and operative effect." *Auto-Owners Ins. Co. v. Anderson,* 756 So.2d 29, 34 (Fla. 2000), (holding that the court "must read [the pertinent] clause in conjunction with the entire policy, including the . . . coverage provision and the policy declarations"). "When the language of an insurance policy is clear and unambiguous, a court must interpret it according to its plain meaning, giving effect to the policy as it was written."

> *E.Fla. Hauling, Inc. v. Lexington Ins. Co.,* 913 So.2d 673, 676 (Fla. 3d DCA 2005).

*Arguelles v. Citizens Prop. Ins. Corp.,* 278 So.3d 108, *111 (Fla. 3rd DCA 2019)

## V.     Argument

Quest Church neglected to disclose in its application for property insurance, despite being asked, that the buildings for which coverage was sought were clad in EIFS. This representation was a material one for the underwriters assessing the risk. Westchester accordingly offered a Quote that explicitly reiterated there was "no EIFS/Dryvit on the exterior walls," and Quest did not correct that information. Westchester then offered a policy that contained the EIFS Construction Provision excerpted above, and Quest did not object or seek a correction. Then on three occasions, Westchester renewed that policy of insurance, with the same EIFS Construction Provision, and Quest again did not object or seek a correction. The protection afforded to Quest under the policy is consequently subject to the enumerated Covered Causes of Loss contained in the EIFS Construction Provision.

The parties to a contract are presumed to know and to understand the contents of that contract.

> Florida law has long held that a party to a contract is conclusively presumed to know and understand the contents, terms, and conditions of the contract. A party has a duty to learn and know the contents of an agreement before signing it, and any inquiries . . . concerning the ramifications of [the contract] should have been made before signing. [I]gnorance of the contents of a document does not ordinarily affect the liability of one who signs it.

11

*Rocky Creek Ret. Props. v. Estate of Fox*, 19 So. 3d 1105, 1109 (Fla. 2d DCA 2009) (internal citations and quotations omitted).

This rule applies with equal force to insurance policies: "an insured party is presumed to have read the terms of his insurance policy and cannot reasonably rely on any conflicting statement about the policy." *Brown v. Travelers Indem. Co.,* 2011 U.S. Dist. LEXIS 1379 (M.D. Fla. 2011), citing *Burger v. Allstate Ins. Co.,* 667 F. Supp.2d 738, 748 (E.D. Mich. 2009). Each individual, or entity, applying for insurance bears the responsibility not only to accurately relay all material information requested by a potential insurer, but to read any quote and any policy offered to it to determine if the policy will meet its needs. This responsibility rests squarely on the person or entity seeking the insurance:

> [I]t is up to the individual . . . to assess his or her own financial. . .needs, read the policy information provided by the insurer, and make an informed choice from among the insurances offered. "Florida law has long held that a party to a contract is 'conclusively presumed to know and understand the contents, terms, and conditions of the contract.'" *Rocky Creek Ret. Props. v. Estate of Fox,* 19 So. 3d 1105, 1108-09 (Fla. 2d DCA 2009)

*Semerena v. Dist. Bd. of Trs. of Miami Dade College,* 282 So. 3d 974, 978 (Fla 3rd DCA 2019).

Quest is entitled to coverage for a property loss only if the cause of that loss is among those enumerated in section C of the EIFS Construction Endorsement. Quest's loss resulted from a roof collapse caused by the weight of accumulated

rainwater on the roof. This is not among the covered causes of loss in the Endorsement, and Quest is therefore not entitled to coverage.

WHEREFORE, as there is no dispute as to the only facts material to this Motion, and Westchester has demonstrated it is entitled to judgment as a matter of law, Defendant Westchester Surplus Lines Insurance Company respectfully requests that this Court grant it summary judgment on Quest Church's claim against it for breach of contract.

Date: September 5, 2023            Respectfully submitted,

                       By:   */s/ David C. Bibb*
                             David C. Bibb (Fla. Bar No. 190330)
                             ROLFES HENRY CO., LPA
                             3191 Maguire Boulevard, Suite 160
                             Orlando, Florida 32803
                             Telephone:  (407) 284-4990
                             Email:    dbibb@rolfeshenry.com
                                       rkitchens@rolfeshenry.com

                             Brian P. Henry, Esq. (Fla. Bar No. 089069)
                             ROLFES HENRY CO., LPA
                             5577 Broadcast Court
                             Sarasota, Florida 34240
                             Telephone:  (941) 684-0100
                             Email:    bhenry@rolfeshenry.com
                                       kmcclintock@rolfeshenry.com

                             *Attorneys for Defendant Westchester*
                             *Surplus Lines Insurance Company*

## **CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that a true and accurate copy of the foregoing has been served via e-mail on counsel for all parties at the email addresses below, on this 5th day of September 2023:

T. Thomas Woods, Esq.
Woods & Woods, P.A.
612 E. Colonial Drive, Suite 190
Orlando, FL 32803-4650
Telephone: (407) 481 2982
Email: t.michael@woodsandwoodspa.com

*Attorney for Plaintiff St. Paul's Presbyterian Church, Inc. d/b/a Quest Church*

               */s/ David C. Bibb*
               David C. Bibb (Fla. Bar No. 190330)